179 F.3d 996
 David G. KEY, Plaintiff-Appellee,
Michigan Protection and Advocacy Service, Incorporated,
Intervenor-Appellee,
v.
Henry GRAYSON, Warden, Trusty Division, Jackson Prison
(SMT); Gary Gabry, Chairperson, Michigan Parole
Board; Kenneth McGinnis, Director,
Michigan Department of
Corrections, Defendants-Appellants.
 No. 98-1471.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 19, 1999.
Decided June 9, 1999.
 
 Appeal from the United States District Court for the Eastern District of Michigan at Flint. No. 96-40166--Paul V. Gadola, District Judge.
 ARGUED: John L. Thurber, Office of the Attorney General, Corrections Division, Lansing, Michigan, for Appellants. Daniel E. Manville, Ann Arbor, Michigan, for Appellee. ON BRIEF: John L. Thurber, Office of the Attorney General, Corrections Division, Lansing, Michigan, for Appellants. Daniel E. Manville, Ann Arbor, Michigan, for Appellee.
 Before: RYAN, DAUGHTREY, and COLE, Circuit Judges.
 OPINION
 COLE, Circuit Judge.
 
 
 1
 This appeal requires us to determine whether, prior to 1996, it was clearly established that the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq., and the Rehabilitation Act of 1973 (Rehabilitation Act), 29 U.S.C. § 794, applied to prisoners. Although it is now established that the ADA and the Rehabilitation Act apply to prisoners, see Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206,--, 118 S.Ct. 1952, 1956 (1998), the issue before us is whether the law was clearly established in 1996, prior to the Yeskey decision. This issue presents a question of first impression in this circuit.
 
 
 2
 Here, Defendants-Appellants (various employees of the Michigan Department of Corrections) appeal the district court's denial of their motion for summary judgment on the basis of qualified immunity with respect to an inmate's monetary claims brought pursuant to the ADA and the Rehabilitation Act. For the following reasons, we conclude that the defendants are entitled to qualified immunity because, prior to 1996, it was not clearly established that the ADA and the Rehabilitation Act applied to prisoners. We therefore REVERSE the judgment of the district court and REMAND for further proceedings in accordance with this opinion.
 
 I.
 
 3
 Plaintiff-Appellee David Key is a hearing-impaired prisoner in the custody of the Michigan Department of Corrections (MDOC). Key is incarcerated for crimes that were apparently sexual in nature, as Key is required to participate in MDOC's therapy program for sex offenders. In addition, Michigan Protective Services requires that Key take part in sex offender therapy before it will allow him to reside in his home with his children. According to Key, participation in sex offender therapy is necessary for another reason as well: he claims that he is subject to denial of parole for failure to participate in such therapy.
 
 
 4
 Key contends that he has attempted to participate in sex offender therapy on numerous occasions but has been unable to do so. Although MDOC requires that Key undergo sex offender therapy, MDOC has refused to allow Key to participate in the available group therapy because of his need for the services of an interpreter, which--according to MDOC--would violate the confidentiality of the other inmates undergoing therapy. Key asserts that his inability to participate is an impermissible form of disability discrimination.
 
 
 5
 On April 10, 1996, Key filed a complaint against various MDOC employees in their official capacities in the United States District Court for the Eastern District of Michigan. Key sought injunctive relief under the ADA; the Rehabilitation Act; 42 U.S.C. § 1983; and the Michigan Handicappers' Civil Rights Act, M.C.L. § § 37.1606. Specifically, Key sought an order from the district court requiring MDOC to provide him with an interpreter for group or individual sex offender therapy. Alternatively, Key sought an order prohibiting the Michigan Parole Board from considering his lack of therapy in any decision regarding his eligibility for parole.
 
 
 6
 Defendants filed a motion for summary judgment, claiming that the ADA and the Rehabilitation Act did not apply to prisons and, in addition, Key's complaint was barred by the Eleventh Amendment because the state had immunity from suit. In a Report and Recommendation, a magistrate judge recommended denying defendants' motion, finding that the ADA and the Rehabilitation Act apply to prisons and that Congress properly acted under Section 5 of the Constitution when it abrogated the states' immunity to suits under the ADA and the Rehabilitation Act.[1] The district court adopted the magistrate judge's Report and Recommendation in full.
 
 
 7
 On September 9, 1997, Key filed an amended complaint in the district court, seeking monetary damages in addition to injunctive relief and noting that his lawsuit was filed against defendants in both their individual and official capacities; however, the substance of Key's complaint remained the same. In response, defendants filed a motion to dismiss and for summary judgment, arguing that qualified immunity was a complete defense to Key's claims for monetary damages against the defendants in their individual capacities.
 
 
 8
 In a Report and Recommendation, the magistrate judge determined that defendants were entitled to qualified immunity and, therefore, recommended that the district court grant defendants' motion for summary judgment with respect to Key's monetary claims. The magistrate judge based his recommendation on his finding that, at the time of the events in question, it was not clearly established that the ADA and the Rehabilitation Act applied to state prisoners. The district court, however, disagreed with the findings in the Report and Recommendation and found that a plain reading of the ADA and the Rehabilitation Act clearly indicate that the statutes applied to state prisoners at the time in question. The district court therefore determined that the law was clearly established and, accordingly, denied defendants' motion for summary judgment on the basis of qualified immunity with respect to Key's claims for monetary damages. Defendants filed a timely notice of interlocutory appeal.
 
 II.
 
 9
 Because the doctrine of qualified immunity is a legal issue, this court's review is de novo. See Summar v. Bennett, 157 F.3d 1054, 1057 (6th Cir.1998) (citation omitted). Moreover, this court is required to examine de novo all appeals from motions for summary judgment which a district court has denied. See id.
 
 III.
 A. Overview
 
 10
 The defense of qualified immunity grants government officials engaged in discretionary activities immunity from individual liability for civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). This court applies a two-part test to determine whether a government official is entitled to the defense of qualified immunity: (1) whether the plaintiff has shown a violation of a constitutionally protected right; and, if so (2) whether that right was clearly established such that a reasonable official would have understood that his behavior violated that right. See Summar, 157 F.3d at 1058.
 
 
 11
 In this case, the first prong of the two-part test is not at issue because defendants do not argue that Key has failed to show a violation of a constitutionally protected right. That is, defendants do not assert, at least for purposes of qualified immunity, that Key's constitutional rights were not violated by the denial of sex offender therapy because of his disability. Instead, defendants contend that they are entitled to qualified immunity because it was not clearly established at the time in question that Key was entitled to therapy despite his disability, because it was uncertain whether the ADA and the Rehabilitation Act applied to state prisoners. Accordingly, the focus in this case is on the second part of the two-part test: whether it was clearly established that the ADA and the Rehabilitation Act applied to state prisoners prior to 1996.[2]
 
 
 12
 To determine whether a right was clearly established for purposes of qualified immunity, this court "look[s] first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits." Chappel v. Montgomery County Fire Protection Dist. No. 1, 131 F.3d 564, 579 (6th Cir.1997) (citation and quotation omitted). Although we have stated that "it is only in extraordinary circumstances that we can look beyond the Supreme Court and Sixth Circuit precedent to find 'clearly established law,' " Walton v. City of Southfield, 995 F.2d 1331, 1336 (6th Cir.1993), there need not be a relevant decision from the Supreme Court or this court in order to determine that a law is clearly established, see, e.g., Chappel, 131 F.3d at 579; McCloud v. Testa, 97 F.3d 1536, 1556 (6th Cir.1996) (stating that the lack of Supreme Court or Sixth Circuit precedent "is not a sufficient condition for concluding that the law is unclear on the subject and so qualified immunity must be granted to the defendant"). We have held that "the decisions of other courts can also clearly establish the law[,] but they must 'point [unmistakably] to the unconstitutionality of the conduct and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional.' " Summar, 157 F.3d at 1058 (citation omitted). If reasonable officials could disagree on the issue, immunity should be recognized. See id. As this court has stated, "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow to raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." Saylor v. Board of Educ., 118 F.3d 507, 515 (6th Cir.) (citation and quotation omitted), cert. denied, --- U.S. ----, 118 S.Ct. 628, 139 L.Ed.2d 608 (1997). The burden of convincing a court that the law was clearly established "rests squarely with the plaintiff." Cope v. Heltsley, 128 F.3d 452, 459 (6th Cir.1997) (citations omitted).
 
 
 13
 B. Applicability of the ADA and the Rehabilitation Act to Prisoners
 
 
 14
 Defendants argue that the law was in a state of flux prior to 1996 as to whether the ADA and the Rehabilitation Act applied to prisoners. Although defendants concede that a majority of courts held that the ADA and the Rehabilitation Act applied to prisoners, several courts reached the opposite conclusion; thus, the law was not clearly established at that time. We must determine then, whether, prior to 1996, it was clearly established that the ADA and the Rehabilitation Act applied to prisoners.
 
 
 15
 Like the district court, we first look to the statutory language of the ADA and the Rehabilitation Act. The district court relied heavily on the fact that the language of the statutes indicate their applicability to prisons. As the district court noted, the Rehabilitation Act applies to "any program receiving Federal financial assistance," 29 U.S.C. § 794 (emphasis added), and the ADA applies to "any department, agency, special purpose district, or other instrumentality of a State or States or local government," 42 U.S.C. § 12131(1)(B) (emphasis added). In addition, the regulations promulgated under the statutes directly refer to correctional facilities. See 28 CFR § 42.540(h) (1995) (interpreting the Rehabilitation Act as applying to, for example, a department of corrections); 28 CFR § 35.130(b)(6)(1995) (interpreting the ADA to apply to "[a]ll programs, services, and regulatory activities relating to law enforcement, public safety, and the administration of justice, including ... correctional institutions"). Thus, although the statutory language and the regulations of both the ADA and the Rehabilitation Act, as well as the Supreme Court's decision in Yeskey, indicate that the statutes are applicable to prisons, see 524 U.S. at--, 118 S.Ct. at 1954, we believe that interpreting the language of the statutes and regulations actually raises two distinct questions: whether the language indicates that the statutes apply to prison employees; and/or, whether the language indicates that the statutes apply to prisoners. Prior to Yeskey, a reasonable interpretation of the statutory language and regulations might well have been that the statutes applied to prison employees, but not to prisoners. Accordingly, we do not agree with the district court that the statutory language clearly establishes that the ADA and the Rehabilitation Act apply to prisoners.
 
 
 16
 We now turn to applicable court decisions. Defendants point to the differing opinions of courts in other circuits for their argument that it was not clearly established that the ADA and the Rehabilitation Act applied to prisons prior to 1996. Defendants cite to other circuit decisions because prior to 1996, neither the Supreme Court, this court or a court within this circuit addressed the issue at hand.[3] In support of their argument, defendants rely heavily on the Fourth Circuit's decision in Torcasio v. Murray, 57 F.3d 1340 (4th Cir.1995). In Torcasio, a morbidly obese prisoner filed suit under the ADA and the Rehabilitation Act after prison officials refused to provide special accommodations for his condition. The Fourth Circuit held that prison officials were entitled to qualified immunity because, prior to 1994, it was not clearly established that the ADA and the Rehabilitation Act applied to prisons. See 57 F.3d at 1352. The Fourth Circuit noted that the management of state prisons is a "core state function" that "is not presumptively subject to federal control." Id. at 1345. Considering the principles of comity and federalism, as well as the "broad, non-specific language contained in ... isolated portions of the acts," the Fourth Circuit reasoned that the ADA and the Rehabilitation Act did not clearly establish that prisons were within their purview. Id. at 1346.[4] As cited by Key, however, prior to 1996 (and thereafter as well), the majority of courts faced with this issue found that the ADA and the Rehabilitation Act in fact did apply to prisons. See, e.g., Lue v. Moore, 43 F.3d 1203 (8th Cir.1994); Harris v. Thigpen, 941 F.2d 1495 (11th Cir.1991); Bonner v. Lewis, 857 F.2d 559 (9th Cir.1988); Journey v. Vitek, 685 F.2d 239, 242 (8th Cir.1982).[5]
 
 
 17
 At least one federal appellate court has recently spoken on the issue of qualified immunity with respect to whether, prior to 1992, it was clearly established that the ADA and the Rehabilitation Act applied to prisons. In Gorman v. Bartch, 152 F.3d 907 (8th Cir.1998), a wheelchair-bound arrestee brought an action under the ADA and the Rehabilitation Act alleging that he was injured when he was transported in a police van without wheelchair restraints. The Eighth Circuit thus had to determine whether the law was clearly established, such that a reasonable police officer would have been aware that the transportation of the prisoner without such restraints violated the ADA and the Rehabilitation Act. That court found that the law was not clearly established, relying on the fact that at the time in question (1992), the ADA was only four months old and there was no case law setting forth the boundaries of the statute; in addition, there were no cases under the Rehabilitation Act with this specific fact pattern. See id. at 915. The court stated:
 
 
 18
 Despite the clear language of the [ADA], there was uncertainty about the extent of its coverage. There were no cases addressing its possible application to government agencies like police departments or the transportation of arrestees.... Under the circumstances, it cannot be said that reasonable police officials in May of 1992 would have known that the actions alleged against the individual defendants in respect to the transportation of a disabled arrestee was subject to, and in violation of, Title II of the ADA or § 504 of the Rehabilitation Act. The defendants are therefore entitled to qualified immunity in their individual capacities....
 
 
 19
 Id.
 
 
 20
 To summarize then, the language of the ADA and the Rehabilitation Act indicates the statutes' applicability to prisons but, prior to 1996, there is no published court decision so holding from the Supreme Court, this court or a court within this circuit. At least one circuit has held that, prior to 1994, the statutes did not apply to state prisons. See Torcasio, 57 F.3d at 1352. Finally, in a similar--albeit distinguishable--situation, the Eighth Circuit determined that qualified immunity was available to defendants because it was not clearly established that the ADA and the Rehabilitation Act applied to the transportation of arrestees.
 
 
 21
 In light of the foregoing, we cannot say that Key has met his burden of demonstrating that the law was clearly established such that defendants are not entitled to qualified immunity. Although the language of the ADA and the Rehabilitation Act indicates the statutes' applicability to prisons, federal appellate courts were in conflict regarding that applicability, which resulted in the Supreme Court resolving the conflict. If federal appellate judges could reasonably disagree over the applicability of the statutes, we do not believe that it can be fairly said that a reasonable official would have known that his conduct violated a clearly established right, see Sheets, 97 F.3d at 168, much less that a reasonable official would have had "no doubt in his mind" that his conduct violated clearly established law, see Summar, 157 F.3d 1058 (citation omitted). Accordingly, we conclude that prior to 1996, it was not clearly established that the ADA and the Rehabilitation Act applied to prisons. The defendants are therefore entitled to qualified immunity with respect to Key's monetary claims against defendants in their individual capacities.
 
 CONCLUSION
 
 22
 For the foregoing reasons, we REVERSE the judgment of the district court and REMAND for further proceedings in accordance with this opinion.
 
 
 
 [1]
 The magistrate judge was correct in finding that the ADA and the Rehabilitation Act apply to prisons, as previously stated, the Supreme Court has conclusively settled that issue. See Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206,--, 118 S.Ct. 1952, 1956 (1998). The Court, however, left for another day the question of whether Congress acted within its power by abrogating states' immunity to suits under the ADA. See id. That issue has yet to be conclusively determined, although most courts that have discussed the issue have found that Congress properly acted within its Section 5 power when it abrogated states' immunity to suits under the ADA. See, e.g., Kimel v. State Bd. of Regents, 139 F.3d 1426, 1433 (11th Cir.1998), cert. granted, --- U.S. ----, ----, 119 S.Ct. 901, 902, 142 L.Ed.2d 901 (1999); Coolbaugh v. Louisiana, 136 F.3d 430 (5th Cir.), cert. denied, --- U.S. ----, 119 S.Ct. 58, 142 L.Ed.2d 45 (1998); Clark v. California, 123 F.3d 1267, 1270-71 (9th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 2340, 141 L.Ed.2d 711 (1998); Crawford v. Indiana Dep't of Corrections, 115 F.3d 481 (7th Cir.1997)
 
 
 [2]
 The relevant state of the law is that which existed at the time of the alleged violation. See Cameron v. Seitz, 38 F.3d 264, 272 (6th Cir.1994). The magistrate judge and the district court noted that Key's complaint did not specify the timing of the alleged discriminatory acts, but concluded that because Key filed his original complaint in April of 1996, the law had to be clearly established prior to 1996 in order to preclude a finding of qualified immunity. At oral argument, Key stated that the relevant date is February 1994, the date at which Key's cause of action accrued. Although Key attached to his brief as an "exhibit" a copy of a memorandum dated February 9, 1994 acknowledging Key's request for therapy, there is nothing in the record that sets forth that date. Accordingly, this court will follow the lead of the district court and consider the relevant time frame to be prior to 1996
 
 
 [3]
 Key points to one unpublished case, in which the United States District Court for the Eastern District of Michigan held that the Rehabilitation Act applied to prisons. See Crisan v.Stacey, No. 87-72053 (E.D.Mich. Aug. 8, 1989). However, unpublished cases have no precedential weight. See Sheets v. Moore, 97 F.3d 164, 167 (6th Cir.1996)
 
 
 [4]
 Defendants also rely on Williams v. Meese, 926 F.2d 994 (10th Cir.1991). In that case, the Tenth Circuit stated--without discussion--in an employment context the Rehabilitation Act did not give plaintiff "any substantive rights since the Federal Bureau of Prisons does not fit the definition of 'programs or activities' governed by that section." Id. at 997
 
 
 [5]
 After 1996, at least two more cases held that the ADA and the Rehabilitation Act applied to prisons. See Yeskey, 118 S.Ct. at 1952 (affirming a 1997 Third Circuit decision); Crawford v. Indiana Dep't of Corrections, 115 F.3d 481 (7th Cir.1997)