Robert **JOSEPH**, Plaintiff–Appellant,

v.

David **MAYNARD**, Defendant–Appellee.

No. 99–6471.

United States Court of Appeals,
Sixth Circuit.

March 16, 2001.

Before WELLFORD, RYAN, and SUHRHEINRICH, Circuit Judges.

PER CURIAM.

Plaintiff Robert Joseph sued Roger Nelson, the coroner of Floyd County, Kentucky, and David Maynard, a Kentucky state police detective who served in this rural eastern portion of Appalachian Kentucky. Joseph's claims were brought under state law and 42 U.S.C. § 1983, alleging that he was he was unlawfully arrested and detained in violation of his constitutional rights; it is a controversy with some alleged political overtones.

The saga began when John Reynolds, a resident in the small town of Martin, shot himself in the chest, and a crew from P & B Ambulance Service ("P & B") was summoned to the scene of the shooting just outside Reynolds' residence.[1] Plaintiff Joseph, who was on the ambulance crew that attended to Reynolds, is a certified emergency medical technician ("EMT") working for P & B, which was owned and operated by Joseph's family. Also on the crew was Claude Childers, another EMT, and Katherine McBride, a paramedic. A paramedic has more training than an EMT, and McBride was considered to be the crew's leader.

While en route to the scene, the ambulance received radio communications asking when the ambulance would arrive and also advising that cardiopulmonary resuscitation ("CPR") was being performed. The ambulance received another radio communication from James Burke of the Martin Police Department, who was already at the scene.

When the ambulance arrived, Maynard was present. The ambulance crew went straight to Reynolds, who was unconscious from his self-inflicted gunshot wound. McBride testified that although the patient was not breathing and had no pulse, she knew that CPR had been in process prior to the ambulance crew entering the residence. She attached the leads of the cardiac monitor and recorded organized electrical activity, which printout was introduced into evidence. Because the patient was not breathing, McBride "intubated" the patient, inserting an airway.

Thereafter, Joseph and Childers placed the patient on a spine board. When they

---

1. The underlying facts of this case are materially undisputed in a number of respects.

picked up the board, it tilted and the patient rolled off, but the heart monitor, oxygen, and IV were not disturbed. The patient was placed back on the board, and McBride asked Burke for his handcuffs so the unconscious patient, or his arms, would not again fall. The patient was then lifted to a gurney, and as the ambulance was leaving, CPR began and continued during the drive to the hospital. McBride ventilated the patient, established an IV and administered Epinephrine and Antripin. Upon arrival at Our Lady of the Way Hospital, the ambulance crew turned the patient over to the care of the emergency room physician and nurses.

The hospital personnel who attended to Reynolds also attempted extreme measures to restore him to life without any success and without noting any blood pressure, pulse, or respiration. Within a matter of minutes after these efforts failed, Reynolds was declared dead. Maynard maintained that an investigation was necessary to determine whether there had been a suicide or a homicide, and the coroner ordered an autopsy.

Meanwhile, the ambulance crew remained at the hospital, having been advised that Coroner Nelson wanted to speak with them. Approximately one to one and a half hours later, Maynard approached the ambulance crew and placed them all under arrest.[2] Maynard initially based his arrest on the crew's "interfering with an officer" in violation of KRS § 150.090, a clearly inapplicable provision relating to the Fish and Wildlife statutes.[3] Maynard claimed that the arrest was influenced in part by the past questionable record of Joseph's family's ambulance service with particular respect to medicare fraud. The ambulance service paid its crew members on a commission basis, dependent upon the services performed. Coroner Nelson had previously made complaints to law enforcement officials against P & B for transporting (and performing "medical services" upon) obviously deceased persons to hospital emergency rooms.[4] Two registered nurses, neighbors of Reynolds, had been unsuccessfully rendering CPR to him for some time before Maynard arrived at the scene and the ambulance had been called.[5] The ambulance was unaccountably delayed in reaching the Reynolds residence. Maynard claimed that it was clear to him that Reynolds was dead when Joseph and the ambulance crew arrived, but he did not openly object to their subsequent actions, being

**2.** Maynard made the arrests allegedly at the insistence of coroner Nelson to "make an example of" plaintiff and his family's ambulance operation. Nelson, not a physician, allegedly referred to Joseph as a "body snatcher," which comment served as the basis of a defamation claim by Joseph.

**3.** At the time of the arrest, Maynard spelled out the basis for his charge but did not advise Joseph that he thought Reynolds was already dead. In his official report, Maynard stated that "[a]fter the male subject was obviously dead, ambulance crew removed body from the scene prior to coroner's arrival for sole purpose of collecting a run fee.... On dead scene, ambulance crew removed body prior to coroner's arrival." The incorrect charge was subsequently withdrawn. The Floyd County grand jury refused to return an indictment against the ambulance crew. At the trial in the instant case, the district court excluded evidence of Maynard's unsuccessful attempts to have the grand jury indict Joseph.

**4.** Nelson, who had no medical training, had advised Maynard prior to the arrest that he believed Reynolds was dead when the ambulance crew arrived on the scene.

**5.** There was testimony that CPR was administered for more than twenty minutes before the ambulance crew arrived, and that there had been no sign of a pulse or breathing. One of the nurses testified that in her opinion Reynolds was clearly dead.

himself then unaware of the extensive efforts of the two nurses before he arrived.

On December 9, 1996, Joseph filed a complaint against Maynard, Nelson, and the police department, seeking substantial compensatory and punitive damages for the defendants' alleged "malicious" and "totally outrageous" conduct, including claims of false imprisonment, malicious prosecution, defamation, and violation of his civil rights. The defendants moved for summary judgment, and the district court granted that motion on or about December 24, 1997. With respect to Maynard, the court held that because he was entitled to qualified immunity because he had probable cause to arrest Joseph.[6]

Joseph appealed that decision to this court, which reversed the district court's decision with respect to Maynard. The district court had recited nine factors in its opinion to support its grant of summary judgment to Maynard. On appeal, this court held "that the district court ignored numerous facts which made it unreasonable for Maynard ... to believe" that plaintiffs "had committed any offense." Specifically, we enumerated some twelve factors that we found had been ignored by the district court. Also, we recognized that "Maynard applied a clearly incorrect statute ... which addresses interference with conservation officers; which is nothing like 'tampering with the evidence,' the crime [Maynard] supposedly committed.... We therefore conclude[d] that the district court erred in granting qualified immunity to Maynard."

Prior to the commencement of the trial on remand, Joseph renewed his motion for summary judgment based on this court's finding that Maynard was not entitled to qualified immunity. The district court denied the motion and the trial proceeded.

At the trial, the district court ruled that the jury could not hear evidence of the subsequent "tampering with evidence" charge and the attempts to have the ambulance crew indicted for a felony. Instead, the jury only heard that within a few days after the incident, Maynard dismissed the misdemeanor Fish and Wildlife charge. The jury in due course rendered a verdict in favor of Maynard.

Joseph now appeals from the judgment entered on the verdict. He claims (1) that he was entitled to summary judgment on the issue of liability because this court had already determined that no prudent police officer could have believed that probable cause to arrest existed; (2) that the district court improperly excluded evidence of Maynard's post-arrest attempts to have Joseph indicted for the felony offense of tampering with evidence; (3) that, assuming the issue of probable cause was properly submitted to the jury, it was error for the district court to permit consideration of whether probable cause existed under the second statute cited when that offense was unrelated to the original offense charged.

*A. Was Joseph entitled to summary judgment on the issue of liability based on the "law of the case?"*

We review *de novo* the district court's decision to deny summary judgment to Joseph on his § 1983 claim. *Key v. Grayson,* 179 F.3d 996, 999 (6th Cir.1999). We note at the outset that Joseph did not follow Fed.R.Civ.P. 56 by filing and serving his summary judgment motion at least ten days prior to a hearing.

■ Joseph argues that the district court erred in failing to grant him summary judgment on the issue of liability because this court's prior order is determinative on the issue and is the "law of the

---

**6.** Joseph challenges only the district court's   decision with respect to defendant Maynard.

case." Joseph claims that whether an officer's conduct was reasonable under the facts of a case is a question of law, and the court must decide the issue when the facts are undisputed. Only when the underlying facts are in dispute does a jury issue arise. *See Pray v. City of Sandusky,* 49 F.3d 1154, 1156 (6th Cir.1995) (stating that summary judgment is not appropriate when the question of immunity turns on the resolution of factual disputes; in such cases, the jury determines whether the defendant is entitled to immunity). Here, Joseph argues that there are no factual disputes in this case, and this court has determined, as a matter of law and as the "law of the case," that Maynard acted in an unreasonable manner when he arrested Joseph on the wrong charge on the night in question.

We find that Joseph was not entitled to summary judgment on the issue of liability, because this court's prior decision did not settle liability-related issues. Rather, this court determined that there were factual disputes to be decided concerning the ultimate issue of whether Maynard was entitled to qualified immunity.[7] *See Flagner v. Wilkinson,* 241 F.3d 475, 483–484 (6th Cir.2001) (recognizing that, in determining whether a defendant is entitled to qualified immunity, "we must only determine whether there is a factual dispute that precludes summary judgment"). Our prior opinion points out that the district court ignored factors weighing in favor of Joseph's position that Maynard did not have probable cause to arrest him, but it did not purport to resolve those conflicting factors in favor of Joseph. It would have been improper under these circumstances to grant judgment for Joseph without a

trial to resolve the conflicts in the evidence borne out of the circumstances surrounding the controversy. Consequently, we believe that the issue of liability was properly submitted to the jury. In sum, Joseph was not entitled to summary judgment as claimed. *See Peterson v. City of Plymouth,* 60 F.3d 469, 473 (8th Cir.1995) (rejecting the plaintiffs' claim that prior appellate decision barred further litigation on the issue of liability because the legal conclusions in prior appeal "were made in the context of a summary judgment motion and did not foreclose further litigation of Peterson's claims or the officers' qualified immunity defense").

**B. Other issues**

■ Joseph further argues that the district court erred in excluding evidence that Maynard dropped the Fish and Wildlife misdemeanor charge so that he could pursue the felony charge of tampering with evidence. He claims that this evidence shows that Maynard acted with malice and could have been found to be liable for punitive damages. Maynard counters, however, that the only issue before the jury was whether he had probable cause to arrest Joseph, and any grand jury evidence was not relevant because it all took place after dismissal of the Fish and Wildlife charges.

We conclude that exclusion of this evidence did not deprive Joseph of a fair trial. The jury was instructed to determine whether "the defendant acted with malice and oppression toward the plaintiff" if it found that Joseph was arrested without probable cause to believe that he committed a crime. *See Sandul v. Larion,* 119

---

7. It should also be remembered that when we determined in the first appeal that the district court improperly granted Maynard's motion for application of qualified immunity, the burden was upon the *defendant* to establish his claim, and the evidence is viewed in a light most favorable to Joseph. On Joseph's motion for summary judgment, we must view the evidence in a light most favorable to Maynard, the nonmovant. *See* Fed.R.Civ.P. 56(c).

F.3d 1250, 1256 (6th Cir.1997) (stating that probable cause pertains to whether such cause existed to show that the suspect committed "an offense"). Maynard's subsequent actions of pursuing the "tampering with evidence" charge is not relevant to that inquiry. That an officer made an incorrect charge initially does not mandate a finding of no probable cause to present another charge growing out of the same incident. While there was no direct relationship between the two charges instituted by Maynard, we are satisfied that the district court did not commit error in its handling of the issue under the particular and unusual circumstances of this case.

█ Finally, Joseph argues that the district court erred in allowing the jury to consider whether Maynard had probable cause to arrest him under the "theft by deception" statute, rather than the inapplicable Fish and Wildlife statute. We agree with Maynard that a police officer need not actually have had the crime for which probable cause existed in mind at the time of the arrest. *See Avery v. King*, 110 F.3d 12, 14 (6th Cir.1997). Thus, the district court committed no reversible error in this regard.

█ The court in a warrantless search and seizure situation will "balance the privacy-related and law enforcement-related concerns" to determine whether there has been a constitutional violation. *See Illinois v. McArthur*, 531 U.S. 326, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001) (citing *United States v. Brignoni–Ponce*, 422 U.S. 873–78, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)); *see also Delaware v. Prouse*, 440 U.S. 648, 654, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). We believe that, after weighing the facts presented, the court and the jury performed that function in this case.

Accordingly, we AFFIRM the judgment entered for defendant after a trial on the merits.