<u>NOT RECOMMENDED FOR PUBLICATION</u>
File Name: 05a0085n.06
Filed: February 4, 2005

**No. 04-1038**


**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**GREGORY A. FIGEL,**

      **Plaintiff-Appellant,**

**v.**

**WILLIAM OVERTON, Warden, et al.,**

      **Defendants-Appellants.**

**ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN**

                                      /


**BEFORE:    SILER, COLE, and CLAY**, Circuit Judges.


      **CLAY, Circuit Judge.**   Plaintiff, Gregory A. Figel ("Figel"), a Michigan prisoner

proceeding *pro se*, appeals a district court judgment dismissing his civil rights complaint, brought

pursuant to 42 U.S.C. §1983.  Figel filed this suit against Michigan Department of Corrections

("MDOC") Director William Overton ("Overton"), MDOC Special Activities Coordinator David

Burnett ("Burnett"), and MDOC Deputy Director Patricia Caruso ("Caruso"), alleging that the

confiscation, pursuant to MDOC Policy Directive 05.03.118, of religious publications sent to him

by the Philadelphia Church of God ("PCG"), violated his rights under the First Amendment and the

Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the

Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C.§2000cc-1.  Figel's

complaint also alleged that Defendants' refusal to change the directive in question constituted retaliation for Figel's filing of grievances and litigation against them. Figel sought declaratory and injunctive relief and compensatory and punitive damages.

For the reasons set forth below, we **REVERSE** and **REMAND** the case to the district court with instructions to vacate its judgment as to Figel's claims under the First Amendment and the RLUIPA, and to order service of process on Defendants as to those claims. We **AFFIRM** the district court's dismissal of Figel's retaliation claim and his claim under the Equal Protection Clause.

## BACKGROUND

Figel is an inmate at the Alger Maximum Correctional Facility in Michigan. He alleges that on November 1, 2002, Defendant Overton implemented Directive 05.03.118, which states, in part, that "prohibited material includes a book, magazine, newspaper, or other publication that is not received directly from the publisher, or is not received from an authorized vendor, or not ordered by the prisoner using established ordering procedures." Figel further alleges that each warden has discretion to authorize vendors for the facility he or she supervises.

Pursuant to this policy, five books sent to Figel in May and June of 2003, by the Philadelphia Church of God ("PCG") in Edmond, Oklahoma, were confiscated.[1] In each instance, Figel received a "Notice of Package/Mail Rejection" from the MDOC that cited Directive 05.03.118 and explained that the book at issue was confiscated because "Philadelphia Church of God is not the publisher of

---

[1]The books were titled: *Incredible Human Potential* (two copies sent), *The Missing Dimension in Sex* (two copies sent), and *Mystery of the Ages*.

this book, nor are they an authorized vendor, nor did the prisoner order this book using established ordering procedures."

Figel requested hearings regarding each of the five confiscated books, and those hearings were held on May 21, May 28, June 4, and June 18 of 2003. At each hearing the decision to confiscate pursuant to Directive 05.03.118 was affirmed, and Figel was required to notify MDOC property staff of his choice of disposal of the material.

In July 2003, Figel wrote to Defendants Overton and Caruso to express his view that the application of Directive 05.03.118 to "religious publications from legitimate religious sources" was unconstitutional and in violation of the RLUIPA, and to request that all religious publications be exempt from the Directive or, alternatively, that all "legitimate religious sources" automatically be given authorized vendor status under the Directive. Figel alleges that Overton and Caruso never responded to his letters. However, a July 25, 2003 letter to Figel from Defendant Burnett, who indicated that he was writing at the request of Defendant Caruso, expressed the MDOC's refusal to exempt "religious publications" from Directive 05.03.118, and "encouraged" Figel to "cooperate with [the directive] and with facility staff in securing appropriate religious publications."

Subsequently, on July 30, 2003, Figel submitted a grievance with the Grievance Coordinator, pursuant to Policy Directive 03.02.130. His grievance was rejected because it challenged policy, and was therefore not a "grievable" issue. Figel twice appealed the rejection of his grievance, unsuccessfully.

Additionally, on July 25, August 21, and September 10, 2003, Figel filed requests with Defendant Caruso's office for a declaratory ruling regarding his claim that the application of

3

Directive 05.03.118 to religious publications was unconstitutional and in violation of the RLUIPA. A letter of September 2, 2003, from Jeff Baumann of the MDOC's Office of Audit, Internal Affairs and Litigation, indicated that Figel's request for a declaratory ruling was being reviewed, and that if no ruling was received within thirty days, Figel should consider the request denied. The complaint indicates that Figel never received a ruling.

On October 17, 2003, Figel filed a complaint in the United States District Court for the Western District of Michigan, alleging that Defendants' implementation and enforcement of MDOC Policy Directive 05.03.118 restricts his rights in violation of the free exercise clause of the First Amendment, the RLUIPA, and the equal protection clause of the Fourteenth Amendment, and that retaliatory actions by Defendants also violated his First Amendment rights.

Figel also filed a motion to proceed *in forma pauperis* in compliance with 28 U.S.C. § 1915(a), which was granted. As required by statutes governing suits filed by prisoners and suits filed *in forma pauperis*, the district court "screened" Figel's complaint to determine, among other things, whether Figel had stated a claim upon which relief could be granted. 28 U.S.C. §1915(e), 28 U.S.C. §1915A, and 42 U.S.C. §1997e. This review by the district court is mandatory and "must occur even before process is served or the individual has had an opportunity to amend the complaint." *McGore v. Wrigglesworth*, 114 F.3d 601, 608-609 (6th Cir. 1997)(specifically referencing 28 U.S.C. §1915(e)(2)).

On December 12, 2004, the district court concluded that Figel had failed to assert any claims upon which relief could be granted, and dismissed his complaint, which had not been served upon Defendants. Figel filed a notice of appeal to this Court on December 15, 2003.

## DISCUSSION

### I.     Standard of review

We review *de novo* a district court's decision to dismiss under 28 U.S.C. §§1915(e), 1915A, and 42 U.S.C. §1997e. *McGore*, 114 F.3d at 604. In assessing a complaint for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accept his factual allegations as true, and determine whether he can prove any set of facts in support of his claim that would entitle him to relief. *Turker v. Ohio Dep't of Rehab. and Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). This generous standard is construed even more liberally when the plaintiff is proceeding *pro se*. *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), citing *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe,* 951 F.2d 108, 110 (6th Cir.1991). A *pro se* complaint should be dismissed only if it is "beyond doubt" that the plaintiff can prove no set of facts which would support a grant of relief. *Haines*, 404 U.S. at 521, citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

### II.    Plaintiff's First Amendment claim

Figel's complaint raises a First Amendment challenge to the confiscation of religious texts sent to him by the PCG. In *Turner v. Safely*, 482 U.S. 78 (1987), the Supreme Court set forth the general standard governing a claim that a prison regulation violates a prisoner's constitutional rights. Under *Turner*, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89. *Turner* articulates a four-factor test to determine the reasonableness of prison regulations. *Id.* at 90-91.

The regulation whose application is challenged here, MDOC Policy Directive 05.03.118, prohibits inmates from receiving publications that are not sent directly from the publisher or an authorized vendor. The district court observed that "both the Supreme Court and the Sixth Circuit have upheld the constitutional validity of rules rejecting mail that is not from a publisher or approved vendor," finding that such rules are reasonably related to a legitimate penological interest. Dist. Ct. Opinion at 4. Citing several cases in support of that proposition, the district court dismissed Figel's First Amendment claim. *Id.*

While the district court was correct that Directive 05.03.118 is facially valid, it erred in failing to recognize that Figel was challenging the regulation *as applied* to exclude PCG from the authorized vendor list. Figel's prayer for relief included "an order that requires the Defendants to add the Philadelphia Church of God to the state-wide authorized religious vendor list." Compl. at 20. *See Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 193-94 (6th Cir. 1997)(citations omitted)(discussing the distinction between facial and as-applied challenges).

Thus, the First Amendment issue in this case is not whether Directive 05.03.118 is reasonably related to a legitimate penological interest, as the district court perceived it to be. Rather, it is whether Defendants' refusal to authorize PCG as a vendor is reasonably related to a legitimate penological interest. "Under *Turner*, [a] plaintiff[] may pursue as-applied challenges to facially valid prison regulations." *Flagner v. Wilkinson*, 241 F.3d 475, 484 n.5 (6th Cir. 2001)(citations omitted).

In our view, Figel has stated a claim that the exclusion of PCG from the authorized vendor list is not reasonably related to a legitimate penological interest, and the district court erred in

dismissing his First Amendment claim. There is nothing in the record or the district court's findings to suggest that PCG is not a legitimate church or religious organization. We therefore remand with instructions that the district court vacate its prior decision with respect to this claim. Of course, we make no comment on the ultimate merits of Figel's claim, particularly as Defendants were never served with the complaint and have not yet had an opportunity to express their basis for refusing to authorize PCG as a vendor.[2]

### III.    Plaintiff's RLUIPA claim

Figel also alleged that the confiscation under Directive 05.03.118 of texts sent to him by the PCG violates his rights under the RLUIPA. In relevant part, the RLUIPA prohibits the imposition by any government of a "substantial burden on the religious exercise" of a prisoner, unless the government can show that such imposition is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C.A. § 2000cc-1(a). In addition to citing this statutory language, Figel alleged that *Incredible Human Potential, The Missing Dimension in Sex,* and *Mystery of the Ages* are all religious books sent to him by the PCG and confiscated by prison authorities. He further asserted that the confiscation of those books interfered with his practice of his religion.

The district court dismissed this claim on the ground that Figel "failed to allege any facts showing that a 'substantial burden' has been placed on his ability to exercise his religious beliefs.

---

[2]We note that while the burden is on the prisoner to disprove the validity of the regulation at issue, *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003), Defendants must still articulate their interest in the regulation. *See Turner*, 482 U.S. at 89. In *Overton*, for example, the Michigan Department of Corrections expressed several interests in the challenged regulations. *Overton*, 539 U.S. at 133. Otherwise, a prisoner would be forced to hypothesize any number of potential legitimate penological interests and then disprove a reasonable relationship between each and the regulation at issue.

The fact that he was unable to obtain certain books sent by the PCG does not by itself constitute such a showing." Dist. Ct. Opinion at 6.

In light of the very liberal pleading rules that should be applied to a *pro se* plaintiff facing dismissal for failure to state a claim, we disagree. Figel's complaint should not have been dismissed for failure to state a claim unless it appeared "beyond doubt that [he] can prove no set of facts in support of his claim which would entitle him to relief." *Haines*, 404 U.S. at 521, quoting *Conley*, 355 U.S. at 45-6. Figel alleged that the confiscation of specific religious texts substantially burdened his right to practice his religion; if he can prove a set of facts to support this claim, he may be entitled to relief under the RLUIPA. We cannot say that Figel is undoubtedly unable to establish that the confiscation of the books at issue imposed a substantial burden on his religious rights. It is true that Figel did not precisely explain *how* his inability to obtain the books burdened the exercise of his religion. However, he was not required to do so. The presentation of even "inferential allegations" respecting the material elements of a claim suffices to state a claim upon which relief can be granted. *See Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir.1988).

The district court could have dismissed the case under other grounds, specifically our precedent in *Cutter v. Wilkinson*, 349 F.3d 257 (6th Cir. 2003). In *Cutter*, we held that §2000c-1 violates the Establishment Clause of the First Amendment "because it favors religious rights over other fundamental rights without any showing that religious rights are at any greater risk of deprivation." *Id.* at 262. This holding clearly precludes Figel from relief under the RLUIPA. However, since the issuance of the district court's opinion, the Supreme Court has granted certiorari

in *Cutter* to review the question of the RLUIPA's constitutionality. 73 U.S.L.W. 3229 (U.S. Oct. 12, 2004)(No. 03-9877).

It would therefore be inappropriate to dispose of Figel's claim based on our holding in *Cutter*. We remand this claim with instructions that the district court vacate its previous decision on this claim, and hold the claim in abeyance for re-consideration pending the Supreme Court's decision in *Cutter*. Should the Supreme Court reverse *Cutter* and uphold the constitutionality of §2000c-1, the district court should reconsider whether Figel has stated a claim upon which relief can be granted.

## IV.      Plaintiff's retaliation claim.

A prisoner's claim that prison officials retaliated against him for engaging in protected conduct is grounded in the First Amendment. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999)(en banc). In order to prove a retaliation claim, a plaintiff must show: (1) that he engaged in protected conduct; (2) that an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that the adverse action was motivated, at least in part, by the plaintiff's protected conduct. *Id.* at 394.

In his complaint, Figel asserts that Defendants' confiscation of his religious texts was retaliation for his filing of complaints, grievances, and litigation against them. However, he alleges no facts in support of his claim of a retaliatory motive. Even if Defendants' confiscation of books sent to Figel is ultimately shown to be a violation of his constitutional rights, the fact that Defendants applied a pre-existing policy directive to prohibit Figel's receipt of those books after Figel filed grievances and litigation against Defendants, does not indicate a retaliatory motive in the

9

absence of any evidence demonstrating that the policy was not applied to Plaintiff in an even-handed manner. Figel has not alleged that Defendants did not apply Directive 05.03.118 even-handedly, or presented any other evidence which might suggest that Defendants' motive for applying the policy in Figel's case was retaliatory.

Even in light of the generous pleading standards applied to the review of *pro se* complaints, the district court correctly dismissed Figel's retaliation claim. Mere "conclusory allegations" will not suffice to state a claim upon which relief can be granted. *Birdo v. Lewis*, 1996 WL 132148, *1 (6th. Cir 1996), citing *Ana Leon T. v. Federal Reserve Bank*, 823 F.2d 928, 930 (6th Cir. 1987).

## V.      Plaintiff's claim under the Equal Protection Clause

Finally, Figel challenges the discretion given to wardens of individual facilities to approve publication vendors, arguing that the fact that one warden could choose to authorize PCG to send books to the prison he or she supervises, while another could choose not to do so, constitutes a violation of the Equal Protection Clause of the Fourteenth Amendment. The district court dismissed this claim because Figel had not demonstrated that he was irrationally and intentionally treated differently from others similarly situated to him. Dist. Ct. Opinion at 7, citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

We agree, and observe that an even more fundamental problem with this claim exists: Figel has not alleged that he is a member of a protected class. *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990)("To state a claim under the Equal Protection Clause, a §1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership

10

in a protected class")(citations and internal quotation marks omitted). We affirm the district court's dismissal of Figel's equal protection claim.

**VI.     Service of process in this case.**

Because the plaintiff is proceeding *in forma pauperis*, the district court is responsible for issuing his process to a United States Marshal who must effect service upon Defendants. *See* 28 U.S.C. §1915(d); Fed. R. Civ. P. 4(c)(2); *Byrd v. Stone*, 94 F.3d 217, 219 (applying former 28 U.S.C. §1915(c)). The district court should now do so with respect to Figel's claims under the First Amendment and the RLUIPA. In light of the district court's dismissal of these claims and this subsequent appeal, the failure to effectuate process in this case within 120 days of filing of the complaint, as normally required under Fed. R. Civ. P. 4(m), is excused for good cause.

## CONCLUSION

For the foregoing reasons, we **REVERSE** and **REMAND** the case to the district court with instructions to vacate its judgment as to Figel's claims under the First Amendment and the RLUIPA, and to order service of process on Defendants as to those claims. We **AFFIRM** the district court's dismissal of Figel's retaliation claim and his claim under the Equal Protection Clause.