NOT FOR PUBLICATION
File Name: 08a0097n.06
Filed: February 6, 2008

No. 06-2199

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT


GREGORY A. FIGEL,

       Plaintiff-Appellee,

                                        ON APPEAL FROM THE
v.                                   UNITED STATES DISTRICT
                                        COURT FOR THE WESTERN
WILLIAM OVERTON, Director,         DISTRICT OF MICHIGAN
MDOC; DAVID BURNETT,
Special Activities Coordinator,
MDOC; PATRICIA L. CARUSO,
Director, MDOC.

       Defendants-Appellants.
_____/

BEFORE:    SUHRHEINRICH, COLE and GIBBONS, Circuit Judges.

       SUHRHEINRICH, J.  Defendants William Overton, David Burnett, and Patricia Caruso,

current and former Michigan Department of Corrections officials, bring this interlocutory appeal to

challenge the district court's refusal to grant them qualified immunity on Plaintiff Gregory Figel's

claim under the Religious Land Use and Institutionalized Persons Act ("the RLUIPA"), 42 U.S.C.

§ 2000cc-1 *et seq.*

I.

       On October 17, 2003, Figel, a Michigan state prisoner, initially filed this *pro se* civil rights

action under 42 U.S.C. § 1983, alleging that Defendants' confiscation of several religious

publications sent to him by the Philadelphia Church of God pursuant to MDOC Policy Directive

05.03.118, violated his rights under the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the RLUIPA. Policy Directive 05.03.118 provides that prohibited mail includes a book, magazine, newspaper, or other publication that is not received directly from the publisher or from an authorized vendor, or not ordered by the prisoner using established ordering procedures. Figel claims that as a result of this policy five religious books sent from the Philadelphia Church of God were confiscated on different occasions in May and June of 2003.

On December 2, 2003, the district court dismissed Figel's complaint for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e), 1915A, and 42 U.S.C. § 1997e(e). Figel appealed and the Sixth Circuit reversed and remanded the case as to Figel's First Amendment and the RLUIPA claims. *See Figel v. Overton*, 121 F. App'x 642 (6th Cir. Feb. 4, 2005). Defendants then filed a motion to dismiss and/or for summary judgment. On March 9, 2006, the district court granted Defendants' motion in part, dismissing Figel's request for injunctive and declaratory relief. This left Figel's First Amendment and the RLIUPA claims.

Following discovery, both parties filed motions for summary judgment. On August 16, 2006, the magistrate judge issued a report recommending that both motions be denied. On August 30, 2006, the district court adopted the magistrate judge's report. On September 5, 2006, the district court denied Defendants' objections to the report and recommendation.

Defendants then filed an interlocutory appeal as well as a motion to stay proceedings in district court. The district court granted the motion to stay on September 8, 2006.

**II.**

Because it is based on purely legal grounds, the district court's denial of Defendants' request for qualified immunity is immediately appealable. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985);

2

*see also Johnson v. Jones*, 515 U.S. 304, 316-18 (1995) (holding that interlocutory appeals, including appeals from the denial of qualified immunity, are limited to rulings presenting "neat abstract issues of law").

Government officials performing discretionary functions are entitled to qualified immunity from suit for civil damages unless their actions have violated a clearly established statutory or constitutional right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, to state a § 1983 claim, there must be a violation of a clearly established constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). As a threshold matter the court considers whether "the facts alleged show that the officer's conduct violated a constitutional right." *Id.* at 201. If so, then the question becomes whether at the time of the alleged violation that right was "clearly established." *Id.* "Clearly established" means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In determining whether a constitutional right is clearly established, this Court looks first to decisions of the Supreme Court, then to its own decisions and those of other courts within this circuit, and finally to decisions of other circuits. *Williams v. Kentucky*, 24 F.3d 1526, 1533 (6th Cir. 1994).

Defendants concede for purposes of this appeal that Figel has alleged facts to establish a violation of a constitutional right, and there is no doubt on that point. *See Cutter*, 544 U.S. 709 (the RULPA, which prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner absent a compelling interest, is constitutional); *see also O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (holding that while "incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain First Amendment protection to

freely exercise their religion). However, as to the second question, Defendants argue that they are entitled to qualified immunity on the RLIUPA claim because it was not clearly established that the Act was constitutional until 2005, when the Supreme Court declared it constitutional in *Cutter v. Wilkinson*, 544 U.S. 709 (2005) (holding that section 3 of the RULPA, which increased level of protection of prisoners' and other incarcerated persons' religious rights, did not violate the Establishment Clause), and the events in question occurred in May and June 2003. Furthermore, in November 2003, a panel of the Sixth Circuit ruled that the RULPA was unconstitutional. *See Cutter v. Wilkinson*, 349 F.3d 257 (6th Cir. 2003), *reh'g en banc denied*, (March 3, 2004), *cert. granted*, 543 U.S. 924 (2004) (No. 03-9877), *rev'd*, 544 U.S. 709 (2005). Thus, Defendants contend that from the time President Clinton signed the RULPA into law in September 2000 until May 31, 2005, when the Supreme Court declared it constitutional, the law was in a state of flux. Defendants point out that prior to May 31, 2005, there was no published decision from this Court or the Supreme Court holding that actions similar to Defendants' behavior in this case violated the RULPA.

The magistrate judge (and district court by adoption) rejected this argument, stating that "[i]n the opinion of the undersigned, as soon as the RULPA was signed into law, it became clearly established law in this country." The court therefore refused to allow Defendants to "hide behind the decision of the Sixth Circuit when the court ruled improperly that the RULPA was unconstitutional, because that ruling came after the asserted conduct in this case."

We agree. As this Court noted in *Key v. Grayson*, 179 F.3d 996 (6th Cir. 1999), "there need not be a relevant decision from the Supreme Court or this court in order to determine that a law is clearly established." *Id.* at 1000; *see also McCloud v. Testa*, 97 F.3d 1536, 1556 (6th Cir. 1996) (stating that the absence of Supreme Court or Sixth Circuit precedent "is not a sufficient condition

4

for concluding that the law is unclear on the subject and so qualified immunity must be granted to the defendant"). More to the point, "the RULPA, like all acts of Congress, carried a strong presumption of constitutionality." *Lovelace v. Lee*, 472 F.3d 174, 197 (4th Cir. 2006); *see also United States v. X-Citement Video, Inc.*, 513 U.S. 64, 73 (1994) (stating that "we do not impute to Congress an intent to pass legislation that is inconsistent with the Constitution as construed by this Court"). As explained by the *Lovelace* court, the RULPA was a modified version of the earlier Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb-2000bb-4, enacted in 1993, which the Supreme Court invalidated as it applied to states and localities with its decision in *City of Boerne v. Flores*, 521 U.S. 507 (1997). *Id. See also Madison v. Riter*, 355 F.3d 310, 314-15 (4th Cir. 2003) (discussing RFRA's partial invalidation and the RULPA's subsequent enactment). In the RULPA, "Congress 'resurrected RFRA's language, but narrowed the scope of the act, limiting it to laws and regulations concerning institutionalized persons or land use.'" *Lovelace*, 472 F.3d at 197 (quoting *Murphy v. Missouri Dep't of Corrs.*, 372 F.3d 979, 987 (8th Cir. 2004)). Congress also "'sought to avoid *Boerne*'s constitutional barrier by relying on its Spending and Commerce Clause powers, rather than on its remedial powers under section 5 of the Fourteenth Amendment as it had in RFRA.'" *Id.* (quoting *Madison*, 355 F.3d at 315). As a result, "Congress thereby aimed to avoid the constitutional problems that plagued RFRA." *Id.* (citing 146 Cong. Rec. S7775 (July 27, 2000) (joint statement of Sen. Hatch and Sen. Kennedy)). In other words, "[f]ederal laws . . . do not need judicial approval to take effect and be clearly established." *Id.*

At the time of the alleged conduct, one circuit had already concluded that the RULPA was constitutional, *see Mayweathers v. Newland*, 314 F.3d 1062 (9th Cir. 2002), and five circuits, including the Ninth, had concluded that the identical operative language in RFRA did not violate the

5

Establishment Clause. *See Cutter*, 349 F.3d at 262 (citing cases). Moreover, several district courts, including one in the Western District of Michigan and the district court in the *Cutter* case, had ruled that the RULPA was constitutional. *See id.*; *Porter v. Caruso*, 479 F. Supp. 2d 687, 692 (W.D. Mich. 2002) (collecting cases). Thus, at the time of Defendants' alleged unconstitutional acts, the RULPA was presumptively constitutional, and no federal appellate authority was to the contrary. Thus, at the time of the conduct in question, the constitutionality of the RULPA was clearly established and Defendants are not entitled to qualified immunity on Figel's RULPA claim. *See generally Lovelace*, 472 F.3d at 198 (stating that "[a]lthough the outer boundaries of the RULPA may have been uncharted at the time, its core protections were not"). "Thus, under both the First Amendment *and* any straightforward interpretation of the RULPA, the unlawfulness and [allegedly] unjustified deprivations of [religious publications] were apparent at the time of the incident." *Lovelace*, 472 F.3d at 199. *Cf. Saluhuddin v. Goord*, 467 F.3d 263, 275 (2d Cir. 2006) (holding that the defendant prison officials were not entitled to qualified immunity on the plaintiff's free-exercise and the RULPA claims because it was clearly established in 2000 that prison officials could not substantially burden inmates' rights to religious exercise without some justification); *see also Farnsworth v. Baxter*, No. 03-2950-B/V, 2007 WL 2793364, at *3 (W.D. Tenn. Sept. 26, 2007) (rejecting the defendant's argument that he was entitled to qualified immunity where the conduct at issue occurred prior to our decision in *Cutter*; citing *inter alia, Lovelace*); *Porter*, 479 F. Supp. 2d at 692 (holding that the defendant was not entitled to a "free pass" for actions taken prior to November 7, 2003, the date of this Court's decision in *Cutter*, simply because the Sixth Circuit and

6

Supreme Court had not ruled on the RLUIPA's constitutionality, especially since all other pertinent legal authorities universally recognized the constitutionality of the RLUPIA).[1]

## III.

In sum, the district court's denial of Defendants' motion for summary judgment on the basis of qualified immunity is **AFFIRMED.**

---

[1]Defendants' reliance on *Key* is misplaced. In *Key*, this Court addressed the applicability of the Americans with Disabilities Act and the Rehabilitation Act to prisoners, noting that prison officials were entitled to qualified immunity during the time that there was uncertainty on this issue. 179 F.3d 996. Unlike those statutes, it is clear from the face of the state that the RULPA applies to prisoners. Further, as noted above, until November 7, 2003, when *Cutter* was decided by this Circuit, the RULPA was valid law requiring compliance by prison officials.