NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0565n.06

Nos. 20-3574/3576/3643

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

MELISSA YATSKO, *et al.*,

   Plaintiffs-Appellees (20-3574/20-3576),
    Plaintiffs-Appellants (20-3643),

v.

DEAN GRAZIOLLI;

   Defendant-Appellant (20-3574),

CITY OF CLEVELAND, OHIO,

   Defendant-Appellant (20-3576),
   Defendant-Appellee (20-3643).

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

FILED
Dec 06, 2021
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

BEFORE: ROGERS, GRIFFIN, and THAPAR, Circuit Judges.

ROGERS, J., delivered the opinion of the court in which GRIFFIN, J., joined. THAPAR, J. (pp. 20–24), delivered a separate opinion concurring in part and dissenting in part.

ROGERS, Circuit Judge. Dean Graziolli, a police officer working secondary employment as a security guard, shot and killed Tommy Yatsko outside a Cleveland bowling alley in 2018. Graziolli had removed Yatsko from the bowling alley after Yatsko fought with his friend, and later that night Graziolli and Yatsko had a dispute outside that culminated in Graziolli's shooting Yatsko twice. The facts of the conflict are heavily disputed—Graziolli argues that Yatsko repeatedly punched Graziolli and was an imminent threat to his safety, while Yatsko's parents assert that Graziolli initiated a fight with the unarmed Yatsko. Yatsko's parents sued Graziolli and the City of Cleveland under 42 U.S.C. § 1983. Graziolli argues that he is entitled to qualified immunity

and appeals the district court's denial of his motion for summary judgment. Yatsko appeals the district court's dismissal of the claims against the City of Cleveland, and the city also appeals that judgment. We do not have jurisdiction to hear the city's appeal of the judgment in its favor, and Yatsko cannot prevail on the § 1983 claims against the city. Graziolli is not entitled to summary judgment because on this limited appeal, the facts as we must take them prevent a determination at this stage of whether Graziolli is entitled to qualified immunity.

**I.**

On January 13, 2018, Graziolli was serving as a security guard for Corner Alley Uptown when he shot and killed Yatsko. Graziolli is a sergeant with the city of Cleveland Police Department. Corner Alley, a bowling alley with a restaurant and bar, decided to increase its security-guard presence after a fight (unrelated to this case) broke out at its venue. A Corner Alley representative contacted the Cleveland Police Department, which permits its off-duty officers to work as private security guards in local businesses as a form of "secondary employment." The representative informed the police department that Corner Alley needed guards to assist management and "keep[] an eye on possible situations prior to anything happening." Graziolli obtained approval from the Cleveland Police Department to work at Corner Alley, and Graziolli was trained on the department's rules and regulations that governed his conduct during his secondary employment. The department's regulations required Graziolli to address any crime he observed while he was on secondary employment, which could include arresting any offenders. Officers on secondary employment were required to carry pepper spray, a baton, and a taser, and officers were permitted to wear their police uniforms.

On the night of January 13, 2018, Graziolli arrived at Corner Alley wearing his police uniform, which displayed his badge and police shoulder patch. Graziolli carried his pistol as a

matter of course, even though department regulations did not require him to do so, but he did not bring a taser, pepper spray, baton, or handcuffs. At around 10:30 PM, a Corner Alley employee asked Graziolli to handle a fight that had broken out between Yatsko and Deleon McDuffie. Yatsko was at Corner Alley to celebrate his friend McDuffie's birthday, but McDuffie made a comment that upset Yatsko, and the two began to fight. As two Corner Alley employees responded to the fight, another employee summoned Graziolli, who did not witness the start of the fight. By the time Graziolli arrived, McDuffie was being escorted out. Graziolli then accompanied Yatsko to retrieve his coat before ushering him out of Corner Alley and telling him he was not permitted to come back inside.

After they left Corner Alley, Yatsko and McDuffie began fighting in the middle of the street. Graziolli went outside to break up the fight. Witnesses have varying recollections of what occurred as Graziolli intervened in the fight. Graziolli claimed that Yatsko kicked and punched a defenseless McDuffie on the ground, but McDuffie asserted that, while Yatsko did try to hit McDuffie while he was on the ground, McDuffie successfully fought Yatsko off. According to Graziolli, as he broke up the fight, Yatsko turned to face Graziolli with closed fists as if he were about to punch him. Graziolli then identified himself as a police officer and said "[l]ook who you're going to punch." McDuffie, however, denied that Yatsko made any gestures indicating he wanted to fight Graziolli. McDuffie claimed that he asked Graziolli if McDuffie could get his phone, which had gotten lost during the fight, and Graziolli—who was being "rude and nasty"—responded "fuck your phone." Graziolli admitted that he said "[f]uck your phone" to McDuffie, but asserted that he was just trying to get McDuffie out of an "active street." McDuffie disputes Graziolli's claim that Graziolli told McDuffie that he was going to call an ambulance for him. McDuffie stated that Graziolli also threatened to arrest him. McDuffie said that after the fight he

was bleeding from his mouth and Yatsko was bleeding from his nose. As McDuffie left, Yatsko walked toward the Corner Alley patio.

Video footage shows Yatsko re-enter the Corner Alley patio and approach Breann Steele, a bystander who had never met Yatsko or McDuffie before. Steele said that Yatsko "asked for a lighter for a cigarette," and Steele asked what was going on and why he was fighting with his friend. Yatsko answered that his friend was being "disrespectful," and Steele noticed that Yatsko's hand was bleeding. Steele said she told Yatsko that she would "go in and get him napkins [for his hand] because he probably wouldn't be allowed back in," and Yatsko "said he didn't plan on going in and thanked [her]." Steele said Yatsko told her that he "needed to figure out a way home" because McDuffie had been his ride to Corner Alley, and they discussed whether he should "figure out a cab or an Uber or something." Steele stated that Yatsko was "very polite and thankful" during that interaction.

Graziolli and Steele gave very different accounts of the start of the conflict between Graziolli and Yatsko. According to Steele, Graziolli approached Yastko and "said that it was time for him to go, he needs to get the fuck on." Steele said that Yatsko asked for help and a unit to take him home, and Graziolli responded "[y]ou can walk for all I care. You need to get the fuck out of here." Steele said she intervened to suggest that they call an Uber for Yatsko, and Steele heard Graziolli say to Yatsko that he "didn't like [Yatsko's] body language." Graziolli claimed that he did not recall anything Yatsko or Steele said during this interaction, and then later denied that he told Yatsko to "get the fuck on," "walk for all I care," or that he did not like Yatsko's body language. Steele said that she did not notice anything intimidating about Yatsko's body language and that he did not "approach [her] aggressively." Steele stated that Graziolli initiated the

4

aggression, but she did not see who threw the first punch. In contrast, Graziolli stated that he was not aggressive and did not start the conflict with Yatsko.

The facts of the ensuing fight between Graziolli and Yatsko are also disputed. Graziolli claimed that Yatsko repeatedly punched Graziolli in the face and head, but that Graziolli did not punch or shove Yatsko. Graziolli described the incident as his "trying to survive being maliciously attacked," and repeatedly maintained that he did not touch Yatsko at all. At oral argument, Graziolli's counsel asserted that Yatsko punched Graziolli five times. Graziolli previously stated, however, that he did not remember exactly how many times Yatsko punched him or how long Yatsko attacked him for. Graziolli claimed that he did not remember the moment he fired his gun at Yatsko and had "no idea" why he pulled the trigger. But later in the same deposition, Graziolli said that he was "being viciously attacked" and said that his "only option . . . was get to my firearm and save my life." Graziolli never saw Yatsko with a weapon and was unable to articulate in what way he thought his life was in danger. At the time he was killed, Yatsko weighed about 149 pounds, while Graziolli estimated that he weighed around 245 pounds. Graziolli stated that when he previously broke up the fight between McDuffie and Yatsko, he was able to remove Yatsko from McDuffie with one hand.

Other witnesses provided testimony that conflicts with aspects of both Graziolli's and the other witness's accounts of the fight. According to Steele, Graziolli "approach[ed] [Yatsko] aggressively" and "[t]hey both went toe to toe." She did not know who threw the first punch, but said that she saw Graziolli hit Yatsko multiple times. She claimed that "both of them connected throughout the fight" and that she yelled at Graziolli to stop and "let [Yatsko] go." Steele asserted that Graziolli pointed his gun "right at Yatsko" without saying anything. Yatsko then said, "I guess you are going to have to kill me" and spat at Graziolli. Steele claimed that Graziolli punched

Yatsko and Yatsko responded by punching Graziolli in the nose. Steele said that was when Graziolli fired two shots at Yatsko. Steele called 911 and said that she needed an ambulance because an officer shot someone and "had to shoot him." She later testified at a deposition that she "was in a state of shock" when she called 911 and wished she "could take . . . back" her statement about Graziolli's needing to shoot Yatsko. Jamila Chambers, a bartender at Corner Alley who witnessed the incident through the glass window, testified that she saw Graziolli throw the first punch. She stated that immediately before the fight started, Yatsko adopted a stance as if he was "[r]eady to fight." She saw both Graziolli and Yatsko repeatedly swing at each other, but said that "it look[ed] like there was only one punch that connected," and it was Yatsko hitting Graziolli. Chambers claimed that after Graziolli aimed his gun, Yatsko "didn't move but stood firm."

There is video footage of the shooting, but it is unclear; only Graziolli and Yatsko's feet or the lower halves of their bodies are in the frame for most of the fight. The video appears to show that Yatsko backed away from Graziolli, who then approached Yatsko and closed the gap between them. It appears that Graziolli pushed Yatsko, and Yatsko came back towards Graziolli and caused him to move backwards. Graziolli grabbed his gun and pointed it at Yatsko, who then approached Graziolli again. The video shows Graziolli shoot Yatsko.

Yatsko immediately fell backward and lay bleeding on the ground. One bullet went through Yatsko's neck and perforated the artery below his left collarbone, while the other entered Yatsko's right shoulder. Yatsko ultimately died of his injuries. It appears that Graziolli spat out blood after he shot Yatsko. Graziolli stated that he had a concussion, a neck sprain, and needed stitches on his lip. The toxicology report indicates that Yatsko did not have any alcohol in his system at the time Graziolli killed him.

In April 2018, Yatsko's parents and the co-administrators of his estate, Melissa Yatsko and Darian Allen, sued Graziolli and the City of Cleveland under 42 U.S.C. § 1983 in the United States District Court for the Northern District of Ohio. Yatsko claimed that Graziolli used excessive force in violation of the Fourth and Fourteenth Amendments. Yatsko also alleged that the city tolerated a pattern of constitutional violations and failed to train and supervise its police officers. Yatsko brought several claims under state law, including wrongful death against both Graziolli and the city and assault and battery, negligence, and intentional infliction of emotional distress against Graziolli.

Both the City of Cleveland and Graziolli moved for summary judgment. The district court granted the city's motion in full and dismissed it as a party, and granted in part and denied in part Graziolli's motion. The court denied Graziolli's motion for summary judgment on the § 1983 excessive force claim. The court concluded that there was a genuine dispute of material fact as to whether Graziolli acted under the color of law, and that factual disputes also prevented the court from determining if Graziolli violated Yatsko's constitutional rights. The court explained that even with the video footage, there remained questions of fact related to the fight and whether Yatsko posed an immediate threat to Graziolli's safety. The court did not reach the issue of whether the alleged constitutional violation was clearly established because "[n]o party asserts that the right at issue was not clearly established." However, the court agreed with the city that Yatsko failed to show that the city had a custom of tolerating unlawful activity. The court declined to consider a Department of Justice report that found a pattern of the use of unreasonable force in violation of the Fourth Amendment. The court concluded that Yatsko did not show that the city failed to supervise its officers or acted with deliberate indifference to the risk of a constitutional violation. The court denied Graziolli's motion for summary judgment on the state law claims,

7

concluding that a reasonable jury could find that an exception to state statutory immunity applied. The court granted Graziolli's motion for summary judgment on the negligence and intentional-infliction-of-emotional-distress claims.

Yatsko moved for an entry of final judgment under Federal Rule of Civil Procedure 54(b) for the claims that were resolved on summary judgment. The court agreed that its grant of summary judgment in favor of the city merited an entry of final judgment and granted Yatsko's motion for that claim only. Graziolli and the city appeal the court's denial of summary judgment on the qualified and statutory immunity claims. Yatsko appeals the court's grant of summary judgment to the city and appeals part of the court's ruling on the state statutory immunity issue. Yatsko acknowledges, however, that the district court did not certify the rulings on the other state-law claims for appeal. Pls.' Br. at 2 n.1. Yatsko moved to dismiss the city's appeal for lack of jurisdiction, arguing that the city cannot appeal a decision in which it received the relief it sought. A motions panel of this court recognized that the Supreme Court has authorized a prevailing party to appeal in limited circumstances, but it "conclude[d] that the merits panel is best situated to determine whether to review the city's appeal" and referred the motion to dismiss to the merits panel.

In sum, there are three appeals before us.

First, Graziolli appeals the interlocutory denial of federal qualified immunity and state statutory immunity. Yatsko is the appellee.

Second, the city cross-appeals to challenge some of the analysis of the district court, even though the district court denied all relief against the city. Yatsko is the appellee.

Third, Yatsko appeals the order dismissing the *Monell* claims against the city, which order was determined by the district court to be final. The city is the appellee.

The second and third issues are relatively straightforward. For purposes of clarity, we address them first.

## II.

## A.

This court lacks jurisdiction over the City of Cleveland's appeal because the city received what it sought below—its dismissal from the suit. "Ordinarily, only a party aggrieved by a judgment or order of a district court may exercise the statutory right to appeal therefrom. A party who receives all that he has sought generally is not aggrieved by the judgment affording the relief and cannot appeal from it." *Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 333 (1980). The city argued in the district court that it was entitled to summary judgment on Yatsko's claim that it was subject to *Monell* liability under § 1983 for tolerating a pattern of constitutional violations and failing to supervise its officers. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The district court granted the city's motion for summary judgment in full on the *Monell* claim and dismissed the city from the case.[1] Because the city prevailed entirely below, we do not have jurisdiction over the city's appeal.

The Supreme Court has allowed a prevailing party to appeal in limited situations, but that exception does not apply here. In *Camreta v. Greene*, the Court held that it had jurisdiction over the officials' appeal despite the fact that the officials prevailed in the lower court and were granted qualified immunity. In that case, however, the Court emphasized that the "statute governing this Court's jurisdiction authorizes us to adjudicate a case in this posture." 563 U.S. 692, 700 (2011) (citing 28 U.S.C. § 1254(1)). There is no analogous statute that applies here, and in *Camreta* the Court explicitly declined to decide whether an appellate court "can entertain an appeal from a party

---

[1] On Graziolli's concession, the court also dismissed the only state-law claim made against the city.

who has prevailed on immunity grounds." *See id*. at 709. We have already rejected the application of the *Camreta* exception to an officer's cross-appeal when the officer was granted qualified immunity. *See Wheeler v. City of Lansing*, 660 F.3d 931, 933 (6th Cir. 2011). In *Wheeler*, the officer wanted to appeal the district court's finding that the officer committed a constitutional violation, but this court held it did not have jurisdiction to do so. *See id.* at 939. We emphasized that "[t]here is generally no appellate jurisdiction when the appellant does not seek a change in the relief ordered by the judgment appealed from." *Id*. Since the city prevailed below, we do not have jurisdiction over the city's appeal of the judgment in its favor.

**B.**

The district court properly held that the City of Cleveland is not liable under § 1983. In Yatsko's appeal of the judgment in favor of the city, determined to be a final judgment under Federal Rule of Civil Procedure 54(b), Yatsko argues that the city is liable under *Monell v. New York City Department of Social Services* because it "had a custom or tolerance of acquiescence toward excessive force" and "the City had a policy of inadequate supervision of officers working secondary employment." Pls.' Br. at 56 (quotations omitted); *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). Yatsko, however, has failed to present evidence sufficient to prove that the city tolerated a pattern of excessive force violations or that the city failed to supervise its officers.

To support the claim that the city tolerated the use of excessive force, Yatsko relies solely on a Department of Justice ("DOJ") report that concluded that the city's police department engaged in a pattern of using excessive force, but that 2014 report is not timely. Yatsko argues that this case is similar to *Kalvitz v. City of Cleveland*, in which the district court concluded that the same report was relevant to whether the city tolerated the use of excessive force on handcuffed or incapacitated individuals. *See* No. 1:16 CV 748, 2017 WL 6805678, at *10 (N.D. Ohio Oct. 16,

2017). *Kalvitz* is distinguishable because the incident at issue in that case occurred in May 2014, during the DOJ investigation (which had begun a year earlier and included a review of incidents from 2012 and 2013), thus making the DOJ report "clearly timely." *See id.* at *10. Here, however, the same report contains statements based on incidents that occurred more than four years before Graziolli shot Yatsko, and only two of the incidents were specific to off-duty officers.

Even if the report were timely, the district court is correct that Yatsko still failed to present evidence indicating that the city approved of the unlawful activity. Under a custom-of-tolerance theory, plaintiffs need to show not only notice or constructive notice, but also that the city "tacitly approved of that unlawful activity by doing nothing" and that such "tacit approval was the moving force behind [the] constitutional violation." *Howse v. Hodous*, 953 F.3d 402, 411 (6th Cir. 2020). Yatsko does not present any evidence that the city was aware of ongoing excessive force violations and tacitly approved them. Yatsko points to Graziolli's disciplinary history, which includes numerous fistfights and Graziolli's repeated failure to report uses of force. Pls.' Br. at 18. That evidence poses the same problem as the DOJ report, because those incidents occurred approximately a decade before Graziolli shot Yatsko. While Graziolli was sentenced to a suspended six-month jail term in 2018 for falsifying duty reports, such conduct says nothing about the city and does not indicate that the city tacitly approves the use of unreasonable force. In fact, the city's own regulations for officers on secondary employment required the officers to carry batons, tasers, and pepper spray, presumably to ensure that officers had the option to employ less lethal weapons.

Yatsko's argument that the city's failure to supervise its officers creates *Monell* liability fails for similar reasons. As the district court noted, it is unclear whether the city has a duty to supervise its off-duty officers as they conduct their secondary employment. Yatsko offers no

authority for that proposition, relying only on a conclusory assertion that the city requires its officers to comply with police rules and regulations on secondary employment and yet does not supervise those officers. Pls.' Br. at 59. But even if the city does have an ongoing duty to supervise, Yatsko still cannot prevail on a failure-to-supervise claim. "To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 286-87 (6th Cir. 2020) (quoting *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006)). First, officers are trained and evaluated as part of their primary employment as officers, and as noted above, Graziolli was subject to disciplinary measures. Even if the training was inadequate because there was no formal evaluation of officers working secondary employment, it is hardly clear that there was a "categorical failure to supervise," as Yatsko alleges. Pls.' Br. at 60.

Second, Yatsko cannot prove the city's indifference to constitutional violations based on the DOJ report and cursory assertions that the city failed to supervise its officers. The DOJ report is not timely, and while it does include a few instances in which off-duty officers used excessive force, it does not establish that there was an ongoing issue with officers' use of excessive force while on secondary employment. There is no further evidence that the city was deliberately indifferent to the use of excessive force, and Yatsko's assertion that the city could improve its supervision of officers on secondary employment is not sufficient. "[I]n virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate

12

incident," and that is not enough to establish liability. *See Connick v. Thompson*, 563 U.S. 51, 67 (2011) (quoting *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)).

Finally, Yatsko cannot show that the city's alleged failure to supervise its officers on secondary employment was closely related to, or actually caused, Yatsko's injury. On the night he killed Yatsko, Graziolli violated the city's regulations by not carrying his taser, pepper spray, baton, or handcuffs. He also violated the city's de-escalation policy, which requires officers to use de-escalation techniques and avoid aggressive body language, cursing, and physical confrontation. Yatsko's death appears to be, in part, a direct result of Graziolli's conduct *defying* the city's regulations, and Yatsko did not show that the city was aware of and refused to address such defiance.

We have now disposed of all the issues relating to liability on the city's part. The remaining issues involve Graziolli's arguments that he raised as an officer in his individual capacity regarding qualified immunity and state statutory immunity. For purposes of this litigation, the city has no stake in the resolution of these issues.

**C.**

On this interlocutory appeal with respect to federal qualified immunity, Graziolli raises three issues. Each fails to compel qualified immunity.

First, Graziolli contends that he was acting under color of law. Graziolli Br. at 15-18. This is more in the nature of a concession than an argument against qualified immunity in a suit brought under § 1983, which in the first place requires that the defendant acted under color of state law. Graziolli and Yatsko are thus in general agreement on the issue because both believe that Graziolli

was acting under color of law.[2]  But to the extent that Graziolli invites us to reassess the facts in deciding this issue, we decline to do so.  The district court concluded that there is a genuine issue of material fact regarding whether Graziolli was acting under color of law.  As discussed more below, we must accept the facts as found by the district court.  *See Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 402-03 (6th Cir. 2007).

Second, Graziolli argues that shooting and killing someone is not a seizure for constitutional purposes unless there is an associated arrest, restraint, or search.  Graziolli Br. at 18-22.  This implausible argument is contradicted by compelling precedent.  The Supreme Court held that there is "no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment."  *Tennessee v. Garner*, 471 U.S. 1, 7 (1985).  A seizure occurs when an officer shoots someone, regardless of whether the officer is also arresting, restraining, or searching the victim at the time.  We recently concluded that it was "undisputed" that officers seized a victim "by shooting him."  *See Jordan v. Howard*, 987 F.3d 537, 543 (6th Cir. 2021); *see also Stewart v. City of Euclid*, 970 F.3d 667, 672 (6th Cir. 2020).

Graziolli's third and last argument with respect to qualified immunity is that his actions were objectively reasonable.  Graziolli Br. at 22-29.  We cannot accept his argument, because it is based on Graziolli's view of facts that the district court held were genuinely at issue.  The district court explained:

> The facts do not clearly show whether Yatsko posed an immediate threat to Graziolli's safety.  Under Graziolli's and the City of Cleveland's version of the facts, Graziolli was being viciously attacked by a man who had already demonstrated his aggressiveness in two prior fights.  Yatsko had already threatened to kill Graziolli and said that Graziolli would have to kill him.  Graziolli feared that if Yatsko were to get his pistol, Yatsko would kill him.  All that Graziolli could do

---

[2] It is the city that argued that Graziolli was not acting under color of law, but, as discussed above, the city is not a part of Graziolli's appeal of the denial of qualified immunity.

was take the beating until he managed to unholster his pistol and fire two life-saving shots.

But under Plaintiffs' version of the facts, Graziolli picked a fight with Yatsko. During the roughly twenty-second fistfight[,] [b]oth Graziolli and Yatsko threw punches and Graziolli was able to shove Yatsko away using his 100-pound weight advantage. Yatsko was unarmed and never attempted to take Graziolli's weapon. In a state of disbelief that Graziolli would unholster his pistol during a fistfight, Yatsko said that Graziolli would have to kill him. After Yatsko's punches made contact multiple times, Graziolli shot Yatsko twice.

In this interlocutory appeal, we are bound by the district court's determination that a jury could find Yatsko's version of the facts to be true, even if we may differ on de novo review. Under *Johnson v. Jones*, "a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets for a 'genuine' issue of fact for trial." 515 U.S. 304, 319-20 (1995). Thus, any arguments on appeal challenging the district court's determination as to "which facts a party may, or may not, be able to prove at trial," are not reviewable. *Id*. at 313. Similarly, "a defendant may not challenge the inferences the district court draws from those facts, as that too is a prohibited fact-based appeal." *DiLuzio v. Vill. Of Yorkville*, 796 F.3d 604, 609 (6th Cir. 2015) (citing *Romo v. Largen*, 723 F.3d 670, 673-74 (6th Cir. 2013)).

To be sure, the Supreme Court created a limited exception to the rule that an appellate court cannot review factual disputes in an interlocutory appeal from a denial of qualified immunity, but that exception does not apply here. In *Scott v. Harris*, the Court concluded that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." 550 U.S. 372, 380 (2007). In *Scott*, the Court found that the lower court entirely misrepresented the contents of video footage depicting the incident. *See id*. at 378-79; *see also Kindl*, 798 F.3d at 399. Consequently, the plaintiff's "version of events

[was] so utterly discredited by the record that no reasonable jury could have believed him." *Scott*, 550 U.S. at 381. That is not the case here. On our careful and repeated review, the video footage does not establish either version of the facts articulated by the district court, or otherwise resolve material factual disputes over whether Yatsko posed a sufficiently serious threat to justify the use of deadly force. As discussed above, the video footage is obscured and does not show who initiated the fight. The majority of the alleged punches from both Yatsko and Graziolli are not visible. While the footage does show Yatsko moving towards Graziolli, it also shows Graziolli's ability to push away Yatsko. Since the district court's depiction of the facts is not "blatantly contradicted by the record," we cannot review its factual determinations in this appeal.

Of course, on interlocutory review we may "ignore the defendant's attempts to dispute the facts and nonetheless resolve the legal issue," but Graziolli has made no attempt to ask us to do so. *See Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005). Graziolli does not attempt at all to argue that, as an officer acting under color of law, he could constitutionally use deadly force just to settle a fistfight in which he was involved. He has thus forfeited any such argument. Graziolli did not make such an argument either in the district court or on appeal. "An argument not raised before the district court is [forfeited] on appeal." *Johnson v. Ford Motor Co.*, 13 F.4th 493, 503 (6th Cir. 2021) (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008)).

Instead, Graziolli relies on his version of the facts, in which he was aggressively attacked in such a way that he was forced to take defensive action by using his firearm to keep from being grievously injured. Graziolli's brief, generously read, argues in effect that it is not clearly established that an officer is precluded from using deadly force in that situation. We need not

address that argument, however, because it is sufficient for us to conclude that such are not the facts as we must accept them on this appeal.

**D.**

Finally, the district court properly denied Graziolli's motion for summary judgment on the state-law statutory immunity issue. This court has jurisdiction over Graziolli's interlocutory appeal "[b]ecause statutory immunity is a complete defense to suit in Ohio." *Rolen v. City of Cleveland*, 657 F. App'x 353, 367 (6th Cir. 2016) (citing *Chesher v. Neyer*, 477 F.3d 784, 794 (6th Cir. 2007)). We review de novo the denial of summary judgment on the state immunity claims. *Range v. Douglas*, 763 F.3d 573, 582 (6th Cir. 2014).

Graziolli was not entitled to summary judgment because there remain questions of fact related to whether Graziolli's conduct was "manifestly outside the scope of [his] employment or official responsibilities," which would be an exception preventing Graziolli from receiving statutory immunity. *See* O.R.C. § 2744.03(A)(6)(a). Ohio courts typically apply agency-law principles and examine whether "conduct . . . is initiated, in part, to further or promote the master's business." *Cannavino v. Rock Ohio Caesars Cleveland, LLC*, 83 N.E.3d 354, 361 (Ohio Ct. App. 2017) (quoting *Jackson v. McDonald*, 760 N.E.2d 24, 28 (Ohio Ct. App. 2001); *Chesher*, 477 F.3d at 797). Whether Graziolli was acting outside the scope of his employment is a question for the jury because key facts remain disputed. Some facts would support a finding that Graziolli was acting within the scope of his employment, such as that he was wearing his police uniform, identified himself as a police officer to Yatsko, and allegedly threatened to arrest McDuffie. *See Cannavino*, 83 N.E.3d at 361-62. On the other hand, Steele testified that Graziolli engaged in aggressive behavior and made several statements indicating his personal anger towards Yatsko.

A reasonable jury could thus conclude that Graziolli fought with Yatsko because Graziolli had a personal issue with him, and as a result was acting outside the scope of his employment. *See id.*

In the alternative, Graziolli is also not entitled to summary judgment because his conduct may fall under the reckless exception to statutory immunity. *See* O.R.C. § 2744.03(A)(6)(b). The district court declined to rely on this exception, reasoning that the Ohio Supreme Court had defined reckless conduct as conduct "characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Argabrite v. Neer*, 75 N.E.3d 161, 164 (Ohio 2016) (quoting *Anderson v. Massillon*, 983 N.E.2d 266, 273 (Ohio 2012)). Because Graziolli acted with the intent to cause harm, the district court explained, no reasonable jury could conclude that Graziolli consciously *disregarded* a risk of harm. Recent intervening authority from this court has reiterated, however, that "[t]his court has previously endorsed the view that under Ohio law, 'if the trier of fact were to find that [the decedent] posed no immediate threat of harm to anyone else . . . then the officer's actions in shooting the decedent were reckless at best.'" *Stewart v. City of Euclid*, 970 F.3d 667, 677 (quoting *Sabo v. City of Mentor*, 657 F.3d 332, 337 (6th Cir. 2011)) (alteration in original). That reasoning suggests that Graziolli could fall under the recklessness exception to statutory immunity if the jury concludes that Yatsko did not pose a threat to Graziolli. Plaintiffs make this alternative argument for affirmance on this issue in their brief, but Graziolli's reply brief has no response.

**III.**

For the foregoing reasons, we affirm the district court's grant of summary judgment to the City of Cleveland, and the city's appeal is dismissed for lack of jurisdiction. We affirm the district court's denial of Graziolli's motion for summary judgment on both the qualified immunity and statutory immunity issues.

THAPAR, Circuit Judge, concurring in part and dissenting in part. What is a police officer to do when a civilian punches him square in the face after the officer points a gun at him? May he shoot the civilian? Does it matter whether the officer started the fight? These are hard questions that we haven't answered before. According to the Supreme Court's unequivocal guidance, that means qualified immunity applies.

Qualified immunity shields officials like Graziolli from civil liability unless the plaintiff can show: (1) The official violated a federal statutory or constitutional right, and (2) the violation was clearly established at the time of the offense. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). Although Yatsko bears the burden of proving these two prongs, we must take the facts in the light most favorable to him. *See Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006).

According to Yatsko, Graziolli created the situation that ultimately resulted in Graziolli's use of deadly force. But the Supreme Court recently emphasized that it's an open question whether an officer violates the Fourth Amendment by "recklessly creating a situation that requires deadly force." *City of Tahlequah v. Bond*, No. 20-1668, --- S. Ct. ---, 2021 WL 4822664, at *2 (Oct. 18, 2021) (per curiam). And no one would suggest that an officer's provocative behavior is a dispositive factor under the Court's totality-of-the-factors test for excessive force. *See, e.g.*, *County of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1546–47 (2017). In fact, in our circuit, we have limited the review of deadly force to the moments preceding the shooting. *See Dickerson v. McClellan*, 101 F.3d 1151, 1161 (6th Cir. 1996); *Whitlow v. City of Louisville*, 39 Fed. App'x 297, 303 (6th Cir. 2002); *see also Salim v. Proulx*, 93 F.3d 86, 92 (2d Cir. 1996). Luckily, when it is hard to determine whether the official violated a constitutional right, courts may start with the clearly established inquiry. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

To show a violation was clearly established, the plaintiff must prove that "*every* reasonable official" would have known that the *particular* conduct at issue was unlawful. *Mullenix v. Luna*, 577 U.S. 7, 11–12 (2015) (per curiam) (emphasis added and citation omitted). In the excessive-force context, the Supreme Court has made two points crystal clear: The plaintiff bears the burden, and the plaintiff must point to a case with near-identical facts that puts the official on notice of the violation. *See Rivas-Villegas v. Cortesluna*, No. 20-1539, --- S. Ct. ---, 2021 WL 4822662, at *2– 3 (Oct. 18, 2021) (per curiam). In this way, qualified immunity ensures liability reaches only "the plainly incompetent or those who knowingly violate the law." *Mullenix*, 577 U.S. at 12 (citation omitted).

Yatsko doesn't identify any case even hinting that Graziolli violated a clearly established right. Instead, Yatsko points to three sources: *Tennessee v. Garner*, 471 U.S. 1 (1985)—which involved a police officer who shot a fleeing suspect—a slew of Ohio state-court cases, and readily distinguishable Sixth Circuit cases. Yatsko's Br. at 46–49. None of these moves the ball. *Garner* established that officers may use deadly force only if they have probable cause to believe the suspect poses a significant threat of death or serious physical injury. But the Supreme Court has explicitly warned that *Garner* casts this standard at too "high [a] level of generality" to put officers on notice. *Rivas-Villegas*, 2021 WL 4822662, at *2 (citation omitted). And state-court cases alone are not enough to overcome qualified immunity. *See Key v. Grayson*, 179 F.3d 996, 999–1000 (6th Cir. 1999). Finally, none of Yatsko's Sixth Circuit cases involves a fistfight or anything remotely resembling the facts here. In fact, Yatsko admits as much. *See* Yatsko's Br. at 49. That should end the debate.

So how does the majority escape this conclusion? It turns the burden on its head: It suggests that Graziolli—rather than Yatsko—bears the burden of establishing qualified immunity.

And it does so in two ways. First, it argues that Graziolli forfeited any argument that the Constitution permits an officer to use deadly force "to settle a fistfight in which he was involved." Maj. Op. at 16. But Graziolli did not have to make such an argument. Once Graziolli raised qualified immunity, Yatsko bore the burden of showing both that Graziolli's conduct violated the Constitution and that the violation was clearly established. *See Ciminillo*, 434 F.3d at 466.

Second, the majority declines to engage in the clearly established analysis because Graziolli disputes many facts.[1] I agree that we need not accept Graziolli's version of events. But that doesn't mean we can avoid the clearly established analysis altogether. That's because, again, Yatsko bears the burden. Thus, we must ask whether Yatsko has shown that, under his account of the facts, Graziolli's conduct violated a clearly established right. *Cf. Est. of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005). And here, under Yatsko's version of events—indeed under any version—Graziolli didn't violate a clearly established right. As explained above, Yatsko has not identified any on-point case. Nor has the majority. Yet it denies qualified immunity anyway. In doing so, it sends this case to trial, even though the outcome is inevitable no matter what the jury finds.

This approach defies the Supreme Court's guidance on qualified immunity. The Court has made clear that the doctrine gives officers *immunity* from suit, not a "mere defense" to liability.

---

[1] The majority suggests that it must "generously read" Graziolli's brief to find an argument about whether the violation at issue was clearly established. Maj. Op. at 16. But Graziolli's brief states in pertinent part:

> Plaintiffs never argue Graziolli's shooting of Yatsko violated a clearly established constitutional right, and if they did, they never clearly stated what right was violated. Conversely, Graziolli did affirmatively state he did not violate any clearly established constitutional right. Moreover, there is no clearly established right to not be shot while aggressively assaulting a police officer.

Graziolli's Br. at 23. As I read this section, Graziolli unambiguously contests whether his actions violated Yatsko's constitutional right and whether such a violation was clearly established.

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Indeed, qualified immunity is meant to protect government officials from the burdens of litigation. *Id.* And it is "effectively lost" if the case erroneously goes to trial. *Id.* That is why the denial of qualified immunity is immediately appealable in the first place. *Id.* at 526–27. It is also why the Supreme Court has urged lower courts to resolve qualified immunity "at the earliest possible stage in litigation." *Pearson*, 555 U.S. at 232 (citation omitted). And sometimes, as here, that means addressing the second prong of qualified immunity first. *See id.* at 236–37.

But the majority overlooks this guidance. It also overlooks the Supreme Court's unwavering pattern of reversing lower courts who deny qualified immunity without identifying a case with nearly identical facts. *See, e.g.*, *Rivas-Villegas*, 2021 WL 4822662, at \*3; *Bond*, 2021 WL 4822664, at \*3; *City of Escondido v. Emmons*, 139 S. Ct. 500, 503–04 (2019) (per curiam); *Kisela v. Hughes*, 138 S. Ct. 1148, 1153–54 (2018) (per curiam); *Wesby*, 138 S. Ct. at 591; *White v. Pauly*, 137 S. Ct. 548, 551–52 (2017) (per curiam); *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 613–17 (2015); *Carroll v. Carman*, 574 U.S. 13, 17–18 (2014) (per curiam); *Wood v. Moss*, 572 U.S. 744, 759–60 (2014); *Plumhoff v. Rickard*, 572 U.S. 765, 780–81 (2014); *Carroll v. Carman*, 574 U.S. 13, 17–18 (2014) (per curiam); *Stanton v. Sims*, 571 U.S. 3, 10–11 (2013) (per curiam); *Ryburn v. Huff*, 565 U.S. 469, 474 (2012) (per curiam); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–42 (2011); *Brosseau v. Haugen*, 543 U.S. 194, 200–01 (2004) (per curiam).

Was Graziolli's conduct here laudable? No. But was it so "plainly incompetent" that every reasonable officer would have known it was constitutionally forbidden? No again. Thus, qualified immunity shields him from liability on the federal claims.

What's more, Yatsko is not without recourse. As the majority points out, there are state-law remedies available. Such alternative routes to recovery are yet another reason why we should not torture our qualified-immunity jurisprudence by turning the burden on its head. I respectfully dissent in part.